# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| GREGORY A. FRIEDMAN and JUDITH MERCER-FRIEDMAN, | No. 4:07-bk-02135-JMM |
| Debtors. | **MEMORANDUM DECISION** |

Before the court is the Debtors' request to confirm their Second Amended Plan of Reorganization, together with its modification (ECF Nos. 156, 180). An evidentiary hearing was held on October 29, 2012. Appearances were noted on the record.

The matter, taken under advisement, is now ripe for a ruling.

## JURISDICTION

This dispute presents a core matter over which this court has jurisdiction. 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

## PROCEDURE

The long and interesting procedural history of this case is well-known to the parties, and need not be repeated at length here. Instead, the court will focus on the matter immediately before it.

Prior to confirmation, the Debtors eliminated all objections to their Plan, other than that of P+P, LLC, which maintains its opposition to the Debtors' Plan, and seeks to convert the case to one under Chapter 7 (ECF Nos. 175, 213, 315).

As an individual Chapter 11 plan[1], the Debtors' Plan is straightforward. Article 8 of the Plan provides:

> Upon Confirmation of the Plan, all of the assets of the Debtors' estate shall be vested in the Debtors and the Debtors shall continue to work in their consulting and business management company. Debtors shall pay all expenses of their personal life, including taxes and insurance costs, on a current basis. The Debtors' disposable income shall be deposited into the Plan Fund and distributed as provided herein.

(ECF No. 156). In a "modification" to the Plan, the Debtors detailed exactly what amounts would be distributed as to their disposable income, pursuant to 11 U.S.C. § 1115:

> 1.  Paragraph 1.17 of the Plan shall be modified to read as follows:
>
> 0.1  "Plan Fund" shall mean a fund of money to be deposited into an interest-bearing deposit account for the exclusive use by the Debtors to pay Class 2 and 4 Claims. The Plan Fund shall be funded initially from all cash on hand as of the Effective Date, less funds required to pay Claims payable as of the Effective Date in accordance with the Plan. On or before the last day of each month, the Debtors shall deposit their disposable income, as provided in Bankruptcy Code §1325(b)(2) into the Plan Fund, provided however, that the minimum deposit each month shall not be less than the sum of $1,800 for months 1-20 following the Effective date and $2,300 for months 21-60 following the Effective date.

(ECF No. 180). As part of the modification, and consistent with the foregoing, the Debtors further refined Article 8, quoted above:

> 2.  Article 8 of the Plan shall be amended to read as follows:

---

[1] Individual plans are authorized by law. Toibb v. Radloff, 501 U.S. (S.Ct.) 157 (1991); See also, e.g., 11 USC §1115.

2

Case 4:07-bk-02135-BMW    Doc 322    Filed 11/05/12    Entered 11/06/12 10:24:00    Desc
Main Document - Memorandum/Opinion    Page 2 of 14

> Upon Confirmation of the Plan, all of the assets of the Debtors' estate shall be vested in the Debtors and the Debtors shall continue to work in their consulting and business management company. Debtors shall pay all expenses of their personal life, including taxes and insurance costs, on a current basis. The Debtors' disposable income, not less than $1,800 per month for months 1-20 following the Effective Date and not less than $2,300 per month for months 21-60 following the Effective Date (for a total of $128,000) shall be deposited into the Plan Fund and distributed as provided herein. Based upon the filed claims and the debtor's estimate of Administrative Claims, the priority claim of the IRS in the sum of approximately $74,000, together with interest, shall be paid in full in approximately 36 months from the Effective Date, unless the IRS insists on payment within the statutory period of five (5) years from the Petition Date, in which case the Debtor shall accelerate it [sic] payments to insure the IRS claim is timely paid.

## **THE EVIDENCE**

The Debtors' case was presented through the Declaration of Gregory A. Friedman (ECF No. 181), as well as his oral testimony. He was cross-examined by P+P's attorney.

Mr. Friedman described the business operations, their inter-relationship with affiliated entities, and explained how matters had changed due to the procedural circumstances of this five-year old case. He opined upon the feasibility of the plan, and ratified the pleadings and monthly operating reports filed in the case.

Although P+P challenged the value of Debtors' affiliated entities, it presented no independent evidence to dispute the Debtors' assertions of available disposable income. Apparently, P+P never took any meaningful discovery on these issues. The Debtors presented a prima facie case for feasibility.

# THE LAW

## A. Sections 1129(a)(1) and (2)--General Compliance

### 1. In General

These sections require that the Plan and Plan proponent (here, the Debtors) have complied with applicable bankruptcy law. This means that the law has been followed throughout the administrative portion of the case, appropriate fees and reports have been tendered, that the court and creditors have been privy to, or have not been denied access to financial information, that in all respects a debtor has been transparent and candid in its communications, and that it or they have materially complied with the substantive bankruptcy statutes and rules.

Here, the administrative record supports the finding that these elements have been met. All necessary professionals in the cases have been appointed by the court, fees for those professionals have been disclosed and vetted, and procedures for noticing out the Debtors' Plan with adequate disclosure (§ 1125) have been followed. There has been no assertion that the vote solicitation process has been tainted or is otherwise improper. Therefore, it appears that, in general, these provisions of the Bankruptcy Code have been satisfactorily met.

P+P hints that modifications to plans are impermissible. The court disagrees, and to the extent that P+P has objected on this basis, will OVERRULE it.

Modifications of plans occur in many different ways, and in many types of factual scenarios. In order for a reorganization case to function as intended--which is to move it forward at a reasonable pace consistent with justice--it is necessary to consider the totality of circumstances when it comes to modifications. The challenge for courts, creditors and attorneys comes, with operating businesses, in the knowledge that nothing remains static, and that constant adjustment is necessary to attempt to reach the correct result at the end of the case. As the courts have noted, because reorganization cases are fluid, there may be shifting

alliances, ongoing negotiations and last-minute changes, right up to and sometimes through confirmation. See In Re Woodbrook Assocs., 19 F.3d 312, 322 (7th Cir. 1994): "A special aspect of the practice of bankruptcy is that it functions on a fluid set of facts, i.e., the plan can always be changed. And, for the most part, bankruptcy courts permit the parties to submit numerous and alternative plans. Yet, bankruptcy courts are given a great deal of discretion to say when enough is enough." See also In re Henry Mayo Newhall Mem'l Hosp., 282 B.R. 444, 457 (9th Cir. BAP 2002) (Marlar, J., concurring) (considering "all of the fluid factors of an evolving chapter 11 case"); In re Buckner, 218 B.R. 137, 149 (10th Cir. BAP 1998) (Matheson, J., concurring) ("Bankruptcy proceedings are not static; they are fluid and continuing."). This is the reality of a Chapter 11 practice, and it happens every day, and sometimes several times in one day. This court's experience as an attorney, judge and former Ninth Circuit Bankruptcy Appellate Panel judge shows this type of practice to be the rule, not the exception. Were a court to be so rigid in the application of equitable principles that it required that new disclosures and solicitations were needed for every change, it would be extremely difficult to achieve meaningful progress on any given case. Cases would stall as the parties endlessly debated evolving new issues.

The procedural history of the Friedman case, alone, is evidence enough to support the modification based on changed circumstances.

P+P also argues that it has been improperly classified, because it has been placed in a different class from general unsecured creditors. However, the purpose of § 1122 is to disfavor only unfair discrimination. Here, the Class 5 treatment for the unsecured portion of P+P's claim is that it is treated exactly as are the general unsecured creditors in Class 4:

> The holder of the Class 5 Claim shall retain its lien on the Breckenridge property to the extent of the value of Property as determined by the Court under 11 U.S.C. §506 (the "Class 5 Allowed Secured Claim"), which claim shall be satisfied from the proceeds (cash or credit bid) of the sale of the collateral at a foreclosure sale by P+P (or a sale by the first lienholder, Washington Mutual). The amount by which the Class 5 Claims exceeds the Class 5 Allowed Secured Claims shall be allowed as the Class 5 Unsecured Claim. The Class 5 Unsecured Claims shall be paid pro rata upon the same terms as the Class 4 Claims.

(ECF No. 156, Article 7.)  Thus, there is no discrimination of one type of unsecured claim versus another. The Ninth Circuit has noted that classifying claims differently is acceptable, so long as there is a reasonable business reason for so doing. See In re Johnston, 21 F.3d 323 (9th Cir. 1994). Here, the reason for different treatment is that P+P's claim was filed as partially secured and partially unsecured (see Claim No. 25). That claim has never been amended. Thus, the court sees no impropriety in treating this combined secured/unsecured claim in the manner done in Class 5. As filed (and never amended), the P+P claim bore no rational similarity to the general unsecured claims of Class 4. As a matter of fact and law, then, §1122 was not violated.

P+P also questions whether the disclosure requirements of §1125 were met. This court finds (and rules) that §1125 presented adequate disclosure, else it would not have approved the disclosure statement in the first place.

### 2. Sections 1129(a)(1) and (a)(2)—Conclusion

This objection, then, as to the §§1129(a)(1) and (2) requirements, will be OVERRULED.

The court FINDS and CONCLUDES that the Debtors have satisfied §§ 1129(a)(1) and (a)(2) of the Code.

### B. Section 1129(a)(3)--Good Faith

Good faith is an inherent requirement which runs throughout the entire Bankruptcy Code. Because the bankruptcy court is a court of equity, as well as a court of law, and because of the fluidity of bankruptcy proceedings, equity demands a constant balancing of the competing needs of the various constituencies. It is essential that bankruptcy proceedings be transparent, candid and always operate in that spirit.

In its most basic sense, "good faith" means honesty in purpose, faithfulness to one's duty or obligation, observance of concepts of fair dealing, and the absence of intent to defraud or to seek unconscionable advantage. BLACK'S LAW DICTIONARY (9th ed. 2009). The bankruptcy definition most commonly applied is that the good faith, that is needed to confirm a plan of reorganization, requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code. In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002) (citing In re Corey, 892 F.2d 829, 835 (9th Cir.1989)); In re Stolrow's, Inc., 84 B.R. 167, 172 (9th Cir. BAP 1988); In re Jorgensen, 66 B.R. 104, 108-09 (9th Cir. BAP 1986). In order to determine good faith, a court must inquire into the totality of circumstances surrounding the plan, the application of the principal of fundamental fairness in dealing with creditors, and whether the plan itself will fairly achieve a result consistent with the objectives and purposes of the Code. Sylmar Plaza, 314 F.3d at 1074; Stolrow's, 84 B.R. at 172; Jorgensen, 66 B.R. at 109; see also In re Kemp, 134 B.R. 413, 414-15 (Bankr. E.D. Cal. 1991); In re Jasik, 727 F.2d 1379, 1383 (5th Cir. 1984).

P+P raises a concern that the Debtors have not fully disclosed their interests in related affiliates. It then jumps to the conclusion that the affiliates' equity, owned by the Debtors, has value far in excess of what the Debtors have opined to be essentially zero. (See, e.g., P+P Ex. #2.) The Debtors have proven a prima facie case that they have correctly assessed the value of their equity interests in those entities.

P+P has failed to present any factual evidence to contradict the Debtors' valuations.

**Section 1129(a)(3)--Conclusion**

This Chapter 11 case is progressing as it should, and the court FINDS that the Debtors have presented themselves in the best possible light throughout.

The objections on § 1129(a)(3) grounds will be OVERRULED. The Debtors have satisfied this statutory requirement.

## C. Section 1129(a)(4)--Payments In Connection With the
## Case or Incident to the Case Must Be Approved and Reasonable

Typically, this Code section refers to the court's supervision over professional fees. To date, all professionals who are required to do so have applied to the court for fees, or will do so, and will circulate their requests to the primary constituents and the U.S. Trustee, and give parties the opportunity to object. (See, e.g. DN 298, 289, 55)

The court has approved fees on an interim basis, and eventually, procedures will be followed to allow the final entry of orders. The Plan allows the court to retain jurisdiction, for this purpose, post-confirmation. (See Plan, at Article 3, ECF No. 156).

The court FINDS and CONCLUDES that § 1129(a)(4) has been met by the Plan and its proponents.

## D. Section 1129(a)(5)--Post-Confirmation
## Officers and Directors, Insiders and Compensation

A Chapter 11 plan may not be confirmed if the continuation in management of the persons proposed to serve as officers or managers of debtor is not in the interests of creditors and public policy. § 1129(a)(5)(A)(ii); see In re Beyond.com Corp., 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003) (citing In re Sovereign Group, 1984-21 Ltd., 88 B.R. 325, 329 (Bankr. D. Colo. 1988)). Indeed, continued service by prior management may be inconsistent with the interests of creditors and public policy if it directly or indirectly perpetuates incompetence, lack of discretion, inexperience or affiliations with groups inimical to the best interests of the debtor. Beyond.com, 289 B.R. at 145 (citing In re Polytherm Indus., Inc., 33 B.R. 823, 829 (W.D. Wis. 1983)); In re Sherwood Square Assocs., 107 B.R. 872, 878 (Bankr. D. Md. 1989); In re SM 104 Ltd., 160 B.R. 202, 245-46 (Bankr. S.D. Fla. 1993) (manager who diverted rents, violated court orders, made misrepresentations to secured creditors, commingled funds and maintained a

grossly inadequate accounting system, was prohibited by § 1129(a)(5) from continuing in that capacity).

No affirmative evidence was brought forth, by any objecting party, from which the court might conclude that § 1129(a)(5)'s requirements were not met. Therefore, the court FINDS that the Debtors have satisfied their burden as to § 1129(a)(5).

### E.  Section 1129(a)(6)--Governmental Rate Control

This element of § 1129(a) is inapplicable to these Debtors. No creditor or class raised an objection on this ground, and thus the court finds that § 1129(a)(6) does not apply.

### F.  Section 1129(a)(7)--Best Interests of Creditors Test

This section of § 1129(a) requires, with respect to each impaired class of claims or interests, that each holder of a claim or interest in the class either accept the plan or receive under the plan at least as much as it would receive on liquidation. In re Mid Pac. Airlines, Inc., 110 B.R. 489, 491 (Bankr. D. Haw. 1990). This is commonly referred to as the "best interests of creditors test." In re M. Long Arabians, 103 B.R. 211, 216 (9th Cir. BAP 1989).

In their Disclosure Statement, the Debtors detailed their best estimation of how creditors would fare in a hypothetical liquidation. For unsecured creditors, that estimated recovery was felt to be zero. (ECF No. 157 at 6-7).

Although objecting on this basis, P+P failed to present any evidence to contradict this estimate.

P+P's objection, on § 1129(a)(7) grounds, will be OVERRULED.

The Debtors have therefore sustained their burden of proof relative to § 1129(a)(7), and that element of § 1129 has been satisfied.

Case 4:07-bk-02135-BMW    Doc 322    Filed 11/05/12    Entered 11/06/12 10:24:00    Desc
Main Document - Memorandum/Opinion    Page 9 of 14

9

## G. Section 1129(a)(8)--Each Class Must Accept or is Left Unimpaired

This provision of the Code is the counterpart of §§ 1129(a)(10) and 1129(b). If each class accepts or is left unimpaired, this provision is satisfied. If one or more classes dissent and reject the plan, then the debtor must have at least one other impaired class which consents to the plan. § 1129(a)(10). Then, if all of the other § 1129(a) factors are satisfied, the case may proceed to the fair and equitable considerations of § 1129(b) (the "cramdown").

Here, the Debtors cannot satisfy § 1129(a)(8) because they do not have unanimous class consent for their Plan. Class 5 (P+P) has rejected the Plan.

But, since they have at least one impaired consenting class, § 1129(a)(8) simply becomes inapplicable, and is replaced by § 1129(a)(10) and § 1129(b). (See, Ballot Report, DN 320).

## H. Section 1129(a)(9)--Priorities

Parties which previously objected on this ground have now resolved their differences. The court finds this section to be satisfied.

## I. Section 1129(a)(10)--At Least One Impaired Consenting Class

As noted above, in the § 1129(a)(8) discussion, the Debtors have cleared this statutory hurdle, because they have several impaired classes, not including "insiders," which have voted in favor of the Plan.[2] (DN 320).

Section 1129(a)(10) has been satisfied.

---

[2] Although the priority governmental entities did not vote, their stipulation to accept an agreed treatment is a <u>de</u> <u>facto</u> vote in favor of confirmation.

10

Case 4:07-bk-02135-BMW    Doc 322   Filed 11/05/12   Entered 11/06/12 10:24:00    Desc
Main Document - Memorandum/Opinion    Page 10 of 14

## J. Section 1129(a)(11)--Feasibility

Feasibility is the heart of every Chapter 11 reorganization case. It is the most important element of § 1129(a). Section 1129(a)(11) permits confirmation only if:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

"The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." In re Pizza of Haw., Inc., 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11], at 1129-34 (15th ed. 1984)).

"A plan meets this feasibility standard if the plan offers a reasonable prospect of success and is workable. . . .The prospect of financial uncertainly does not defeat plan confirmation on feasibility grounds since a guarantee of the future is not required. . . . The mere potential for failure of the plan is insufficient to disprove feasibility." In re Patrician St. Joseph Partners Ltd. P'ship, 169 B.R. 669, 674 (D. Ariz. 1994).

Every debtor is required to present "ample evidence to demonstrate that the Plan has a reasonable probability of success." In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986); see also 7 COLLIER ON BANKRUPTCY ¶ 1129.02[11], at 1129-52, (16th ed. 2012). Section 1129(a)(11) "requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." Id. at 1129-53 (citation omitted). In order to determine whether § 1129(a)(11) is satisfied, a court must "scrutinize the plan to determine whether it offers a reasonable prospect of success and is workable." In re Sagewood Manor Assocs. Ltd. P'ship, 223 B.R. 756, 762 (Bankr. D. Nev. 1998). Plans which are based on speculation are not proper candidates for reorganization. Pizza of Haw., supra.

In evaluating the feasibility of a plan, the Ninth Circuit's BAP has directed courts to consider several factors, including: (1) the adequacy of the capital structure; (2) the earning

power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. In re Wiersma, 324 B.R. 92, 113 (9th Cir. BAP 2005), aff'd in part and rev'd in part on other grounds, 483 F.3d 933 (9th Cir. 2007).

This Plan, proposed by individual debtors, is one which simply commits future disposable income to its creditors, as § 1115 requires, and specifies what that return will be. No evidence was presented to dispute the Debtors' projections.

The Debtors proved 11 U.S.C. § 1129(a)(11).

### K.  Section 1129(a)(12)--Fees

The U.S. Trustee has not objected on the grounds that its fees, or related fees, are unpaid. No creditor has suggested that compliance with this section has not been met.

The court therefore finds and concludes that this provision of the Code has been satisfied.

### L.  Section 1129(a)(13)--Retiree Benefits

This section is not applicable to these Debtors.

### M.  Section 1129(a)(14)--Domestic Support Obligations (Alimony; Child Support)

This section is not applicable to these Debtors.

12

Case 4:07-bk-02135-BMW    Doc 322    Filed 11/05/12    Entered 11/06/12 10:24:00    Desc
Main Document - Memorandum/Opinion    Page 12 of 14

### N. Section 1129(a)(15)--Individual Chapter 11 Case

This section is applicable to these Debtors, who have complied with its provisions. P+P's objection will be OVERRULED, for lack of evidence.

### O. Section 1129(a)(16)--Transfers of Property

The Plan does not intend to transfer any of the Debtors' assets. Therefore, this section does not apply.

## SECTION 1129(b)--THE CRAMDOWN PROVISIONS AND UNFAIR DISCRIMINATION

If a debtor is able to prove each of the applicable elements of § 1129(a), as these Debtors now have, they then must run the gauntlet of § 1129(b), commonly known as "cramdown." What the Code attempts to do in this section is to have the court analyze, for each rejecting and dissenting class, whether the plan treats them "fairly" and "equitably," and does not unfairly discriminate against them. If a secured class objects, their treatment under the plan must pass through the fire of § 1129(b)(2)(A). For an unsecured class, the applicable Code section is § 1129(b)(2)(B).

If a debtor cannot satisfy the cramdown elements, contained in § 1129(b), then a plan cannot be confirmed.

In order for cramdown to be implemented, and the Plan confirmed over a class' vote against it, the Debtors must show that the Plan does not unfairly discriminate against these dissenters, and that their treatment is "fair and equitable." These latter terms have defined meanings, and in this case, require that their lien interests remain in place, and if payments are deferred and paid over a term, that those payments have appropriate "value." This "value" is generally accepted as being a market interest rate on the secured portion.

13

Case 4:07-bk-02135-BMW   Doc 322   Filed 11/05/12   Entered 11/06/12 10:24:00   Desc
Main Document - Memorandum/Opinion    Page 13 of 14

In this case, the Debtors have elected not to retain their Breckinridge property, against which P+P holds a lien. Thus, P+P's secured portion is to be returned to it, in full satisfaction of the collateralized feature. The Plan's treatment, then, is a "fair and equitable" one. Receiving collateral back is the "indubitable equivalent" of the secured portion. § 1129(b)(2)(A)(iii).

As for the unsecured component of the P+P claim, it is to be paid in the same percentage as Class 4 unsecured creditors. However, this will not be equal to 100% of the unsecured portion.

Were this a corporate or entity case, the "absolute priority rule" would potentially defeat a debtor's retention of any non-exempt property, unless the debtor infused "new value." However, as we now know, the absolute priority rule does not apply to this case. In re Friedman, 466 B.R. 471 (9th Cir. BAP 2012). This is because the debtors are individuals.

## **CONCLUSION**

Based on the entire record in this case, the court FINDS AND CONCLUDES that Debtors' Second Amended Plan (and its modification) may be confirmed.

Counsel for the Debtors shall present an appropriate form of order within 15 days (attaching a grid or matrix as to the final iteration of class treatment).

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:

Attorney for Debtors
Duncan E. Barber, Attorney for P+P, LLC
Office of the U.S. Trustee